UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

OLEN WOMBLE, III,

        Plaintiff,

Case No. 1:12-cv-814

Hon. Robert J. Jonker

v.

MARY BERGHUIS, *et al.*,

        Defendants.

_____/

**REPORT AND RECOMMENDATION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-1(a). This matter is now before the court on defendant Darrin Gargus and Derek Bradford's motion for summary judgment (docket no. 17).

    **I.**    **Background**

    **A.**    **Plaintiff's complaint**

The Court summarized plaintiff's claim as follows:

Plaintiff Olen D. Womble, III presently is incarcerated with the Michigan Department of Corrections (MDOC) at the Earnest C. Brooks Correctional Facility (LRF). He sues MDOC Grievance Specialist K. Austi and the following LCF employees: Warden Mary Berghuis; Food Service Director (unknown) Henry; Assistant Food Service Director L. Daniels; Correctional Officers (unknown) Stellino and (unknown) Gargus; Assistant Resident Unit Supervisor (ARUS) D. Bradford; Assistant Deputy Warden (unknown) Southerby; Grievance Coordinator J. Minnerick; and Deputy Warden J. Verboncouer.

Plaintiff alleges that, at all times relevant to the complaint, he has been a practicing Buddhist who adheres to a strict vegan diet, avoiding all animal products or byproducts such as cheese, milk, butter and eggs. Defendant Daniels wrote a "Notice of Intent to Conduct an Administrative Hearing" (NOI), attaching a report from Defendant Gargus stating that he had observed Plaintiff eating eggs and

requesting Plaintiff's removal from the vegan diet line. On July 24, 2010, Defendant Stellino reviewed the NOI with Plaintiff. Plaintiff requested a copy of the NOI, but Stellino advised him that he would have to request a copy from Defendant ARUS Bradford. Plaintiff made the request and Bradford assured him that he would receive a copy of the NOI before the hearing.

On August 4, 2010, Bradford conducted an administrative hearing on the alleged violation, before Plaintiff had been given a copy of the NOI. Plaintiff told Bradford that Gargus was either lying or mistaken, because Plaintiff did not eat eggs or have eggs on his tray. Plaintiff also told Bradford that Gargus had never mentioned the alleged incident to Plaintiff. Bradford then adjourned the hearing to further question Gargus. When the hearing was reconvened a day or two later, Bradford informed Plaintiff that, contrary to his earlier report, Gargus admitted that he never actually saw Plaintiff eat any eggs, but he saw Plaintiff mashing eggs on his plate and that, when he returned, only bits of the eggs remained on Plaintiff's plate. Plaintiff argued that Gargus' changing story was further evidence that he was lying. Bradford advised Plaintiff that he was not going to dismiss the NOI unless authorized by his supervisor, Defendant Southerby. Bradford told Plaintiff that he was expected to uphold an NOI, and that he was not prepared to have a variety of people angry with him unless he had the backing of a supervisor. He then adjourned the hearing.

On August 7, 2010, Plaintiff received a copy of Bradford's decision upholding the NOI and recommending that Plaintiff be removed from the strict vegetarian diet. In his decision, Bradford misquoted Plaintiff as saying, "[N]ever at all did Gargus . . . approach me when there was eggs on my plate. I know for a fact that he didn't see me eat them (eggs)[."] (Compl. ¶ 20, docket #1, Page ID#4.) Plaintiff complains that the alleged misquote implied that he had, in fact, had eggs on his plate, contrary to Plaintiff's continuing declaration that he never had eggs.

On August 8, 2010, Plaintiff asked Bradford for a copy of Gargus' original statement in the NOI. Bradford refused, stating that he was not required to provide it. Plaintiff showed Bradford a copy of the relevant MDOC. Bradford then asked Plaintiff why he wanted it. Plaintiff informed Bradford that he might use it in a civil suit. Bradford stated, "[Y]eah, that's what I figured. I'm not getting in the middle of you and Gargus's shit." (*Id.* ¶ 21.) Bradford then issued the final denial. Plaintiff contacted health services on August 10, 2010, indicating that he needed help because he had not eaten for two days out of fear that something he received might contain a food prohibited by the tenets of his religion. Health services recommended that he speak with the chaplain and look for food he could eat in the chow hall.

An December 8, 2010, Plaintiff was placed back on the strict vegan diet, after he again tested sufficiently knowledgeable about his religion. During the intervening four months, however, Plaintiff lost 13 pounds because he was able to eat only beans, rice, fruits and vegetables, when they were served.

2

>Plaintiff alleges that Defendant Berghuis is liable for the deprivation of his First and Fourteenth Amendment rights as warden of the facility and because she denied his Step II grievance. He contends that Defendant Gargus intentionally lied in order to deprive Plaintiff of his right to eat a vegan diet, in violation of the First Amendment and the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-1(a). Plaintiff argues that Defendant Daniels deprived him of his rights under First Amendment and the RLUIPA and deprived him of due process and equal protection because he issued an NOI based on Gargus' falsified memorandum. Plaintiff contends that Defendant Stellino violated his rights under the First Amendment, the Due Process Clause, the Equal Protection Clause, and the RLUIPA by failing to provide Plaintiff with a copy of the NOI. Plaintiff claims that Defendant Bradford violated his rights under the First Amendment, the RLUIPA the Due Process Clause, the Equal Protection Clause and the RLUIPA by finding Plaintiff guilty of the offense and terminating his vegan diet, by refusing to provide a copy of the NOI and supporting memorandum, and by violating MDOC policy. He asserts that Defendant Southerby violated the same rights by allowing Bradford to grant the NOI. Finally, Plaintiff claims that Defendants Minnerick and Austi violated the same rights by failing to grant his grievances.
>
>Plaintiff seeks declaratory and injunctive relief, together with compensatory and punitive damages.

Opinion at pp. 2-5 (docket no. 7). Upon initial screening, the Court dismissed all defendants except Gargus and Bradford. *Id.* at p. 13; Order (docket no. 8). While the Court concluded that plaintiff's allegations against defendants Gargus and Bradford were sufficient to warrant service of the complaint against them, it did not address the nature of those claims. *Id.*

### B. Plaintiff's remaining claims

#### 1. Defendant Gargus

Plaintiff's claim against defendant Gargus is that "Gargus lied in the memo that he wrote in support of the NOI by stating that he directly observed plaintiff eating eggs" and "that Gargus later admitted to [d]efendant Bradford that he did not see plaintiff eating any eggs." Compl. at ¶ 27. Plaintiff then draws the conclusion that Gargus' "sole purpose" for writing a memo in support of the NOI was to show that plaintiff had violated his religious tenets.

3

> Gargus, thus, violated plaintiff['s] First Amendment right to equal protection, under the U.S. Constitution. He, also, violated plaintiff['s] rights under the RLUIPA. Consequently, he has caused plaintiff severe hardship, pain, suffering and emotional distress.

*Id.*

### 2. Plaintiff's claim against defendant Bradford

Plaintiff's claim against defendant Bradford relates to procedure by which Bradford conducted the hearing. *Id.* at ¶ 30. Plaintiff complains that Bradford failed to provide him with a copy of the NOI written by Daniels or Gargus' memo before the hearing. *Id.* Based on the allegations in the complaint, plaintiff stated

> Bradford, thus, deprived plaintiff of his Fourteenth Amendment due process right to equal protection, since every other similarly situated prisoner would have been found <u>not</u> <u>guilty</u> of the charged violation based on the MDOC's "preponderance of evidence" standard. Moreover, Bradford deprived plaintiff of his First Amendment right to freely practice his religion, since his decision to find plaintiff guilty of the alleged violation is based on the equal protection violation.
>
> And finally, Defendant Bradford's decision to go an[d] ask his supervisor -- i.e. Defendant Southerby -- what to do, in light of Gargus' lie, violated plaintiff's Fourteenth Amendment right to equal protection, because every other similarly situated prisoner's findings are based solely on the information contained in the record, per MDOC policy; and because this violation led to the guilty finding and, ultimately, his removal from the religious diet line, Bradford's actions violated plaintiff's First Amendment right to freely practice his religion.
>
> In addition to violating plaintiff's First and Fourteenth Amendment rights, under the U.S. Constitution, Bradford's actions deprived him of his rights under RLUIPA. All of the violations caused him pain, hardships, emotional distress, and suffering.

*Id.* (Emphasis in original.)

## II. The motion for summary judgment

### A. Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by":

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, the court is not bound to blindly adopt a non-moving party's version of the facts. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury

5

could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### B. The Zero Tolerance policy

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983 and RLUIPA. Section 1983 confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 45 n. 2 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

RLUIPA prevents the government from placing a substantial burden on prisoner's religious exercise. *See* 42 U.S.C. § 2000cc-1.

Plaintiff's claim arises from the "zero tolerance policy" for violating a prisoner's religious diet under MDOC Policy Directive 05.130.150 ¶ VV (effective Sept. 20, 2007), which at the time of the alleged incident in 2010 provided as follows:

> A prisoner approved to eat from a religious menu shall have that approval rescinded if he/she eats, or has in his/her possession, any food item that violates a tenet of his/her designated religion. The approval shall be rescinded only after a hearing is conducted pursuant to Administrative Rule 791.3310 to establish the basis for that removal. A prisoner may reapply to eat from a religious menu no sooner than 60 calendar days after approval is rescinded the first time and no sooner than one year after approval is rescinded a second time. A prisoner may reapply to eat from a religious menu only with approval of a CFA Deputy Director if approval has been rescinded more than twice.

In *Colvin v. Caruso*, 852 F. Supp.2d 862 (W.D. Mich. 2012), this Court addressed Policy Directive 05.03.150 ¶ WW (effective May 24, 2004), a previous and identical version of Policy Directive 05.03.150 ¶ VV which is at issue in this action. *See Colvin*, 852 F. Supp.2d at 865-66 and fn. 2. On remand from the Sixth Circuit Court of Appeals, the court in *Colvin* held that the MDOC's draconian, "zero tolerance" policy set forth in Policy Directive 05.03.150 ¶ WW, which resulted in the rescission of the plaintiff prisoner's religious diet was unconstitutional, violating both the prisoner's First Amendment rights and RLUIPA.

> Colvin was removed from the kosher diet regimen on May 14, 2007, because of a strict application of MDOC Policy Directive 05.03.150, which in effect institutes a "zero tolerance" policy for possession of even one non-kosher food item by prisoners on a religious diet. The Court of Appeals in this case has summarized the four factor test for evaluation of prison regulations that affect prisoners' constitutional rights. *Colvin v. Caruso*, 605 F.3d at 293, citing *Spies v. Voinovich*, 173 F.3d 398, 403 (6th Cir.1999). These are the factors set forth by the Supreme Court in *Turner v. Safley*, 482 U.S. 78, 90–91, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). Here, of course, we are dealing with a prisoner's First Amendment right to freely practice his religion. Those factors are:
>
> (1) There must be a valid rational connection between the prison regulation and the legitimate governmental interest put forward to justify it. In this case the MDOC certainly has, as it asserts, an economic interest in restricting the kosher diet to those prisoners who have a sincere belief that such a diet is necessary to practice their religion. Kosher diets are an added expense to the MDOC.
>
> (2) Whether there are alternative means for prisoners to exercise the constitutional right that is being affected. Here it is difficult to see how Colvin had any other means of eating, assuming his religious sincerity.
>
> (3) The impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of resources. There is no evidence, and no reason to believe that if the MDOC regulation provided a modicum of flexibility in the decision to deny a religious diet, there would be a ripple effect on prison staff or inmates. *See Turner*, 482 U.S. at 90, 107 S.Ct. 2254 (explaining that courts should be particularly deferential to the discretion of corrections officers when the accommodation would have such a ripple effect).

(4) Whether there is an absence of ready alternatives to the regulation. There is no reason the conclude that if the "zero tolerance" aspect of the MDOC regulation were modified, the cost of providing kosher meals would escalate. For example, a regulation could provide that if a prisoner committed some number of dietary violations in a given time period, the religious meals could be suspended. *See Kuperman v. Warden, New Hampshire State Prison*, 2009 WL 4042760, at *2 (D.N.H. Nov. 20, 2009). Human nature, being what it is, will rarely allow any person to achieve religious perfection, let alone dietary perfection. One can be both religious and an occasional backslider. One slip in following the tenets of a religion does not necessarily transform one into a nonbeliever.

In short, an evaluation of the *Turner v. Safley* factors weighs in favor of Mr. Colvin on this issue, and leads to the conclusion that MDOC Policy Directive 05.03.150 has denied him his First Amendment free exercise right.

RLUIPA provides even more protection to Colvin than does the First Amendment. *Colvin v. Caruso*, 605 F.3d at 296. RLUIPA provides that:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc–1(a).

As discussed above, there is indeed at least some governmental interest in limiting religious meals to sincere believers. However, the MDOC's draconian regulation here worked to deprive Colvin of his diet for a one time possession of protein powder. This is certainly not the least restrictive means of accomplishing that cost-saving objective. The regulation therefore violates RLUIPA as well as the First Amendment. As the Court of Appeals strongly indicated in this case, the MDOC regulation is overly restrictive of inmates' religious beliefs. *Colvin v. Caruso*, 605 F.3d at 296. In this case, the regulation worked to deny Colvin both his First Amendment free exercise right as well as his statutory rights under RLUIPA.

*Colvin*, 852 F.Supp.2d at 867-68. This Court entered the *Colvin* decision on February 9, 2012, approximately six months before plaintiff filed the present action on August 7, 2012.[1]

Here, defendants Gargus and Bradford were acting pursuant to a policy under ¶ VV which was subsequently determined to violate both the prisoner's First Amendment rights and RLUIPA. Defendants, however, have not addressed the constitutional flaw identified in *Colvin*. On the contrary, defendants' motion for summary judgment on plaintiff's First Amendment and RLUIPA claims are premised on the ground that ¶ VV does not violate either the First Amendment or RLUIPA. *See* Defendants' Brief at pp. 9-15. Similarly, defendants' motion for summary judgment on plaintiff's equal protection and due process claims arise from a hearing which occurred for a violation of ¶ VV. *Id.* at pp. 3-8. In short, all of plaintiff's claims arise from the application of a zero tolerance policy which this court found to be both unconstitutional and in violation of RLUIPA on February 9, 2012, some eight months prior to plaintiff filing this action and more than

---

[1] The court notes that effective September 30, 2012, Policy Directive 05.03.150 ¶ VV was revised to eliminate the zero tolerance policy which was found unconstitutional in *Colvin*. *See* MDOC Director's Office Memorandum 2013-25 (Jan. 1, 2013). The revised ¶ VV provides for a less draconian punishment for the prisoner who violates his religious diet:

> A prisoner approved to eat meals prepared from a religious menu who is found at an administrative hearing conducted pursuant to Administrative Rule 791.3310 to either have possessed or consumed food that violates a tenet of his/her designated religion shall be referred to the institutional chaplain to discuss the matter and be counseled on how to conform his/her conduct to religious dietary requirements. The chaplain shall document the counseling in writing. If, subsequent to this counseling, the prisoner is found at an administrative hearing to have again possessed or consumed food that violates a tenet of his/her designated religion, the prisoner's approval to eat meals prepared from a religious menu shall be rescinded. The prisoner may apply for reinstatement no sooner than 60 calendar days after the approval is rescinded the first time and no sooner than one year after approval is rescinded a second time. A prisoner who has approval rescinded three or more times must appeal to the CFA Deputy Director for reinstatement.

*Id.*

one year after defendants filed their motion for summary judgment. Given this ruling, and the fact that the MDOC eliminated the zero tolerance policy about one month after plaintiff filed this action, it would be reasonable to expect that defendants' brief would have addressed the constitutionality of the zero tolerance policy.

In this regard, while plaintiff's claims arise from the application of an unconstitutional policy, it is conceivable that defendants could prevail under the qualified immunity doctrine. Indeed, this the court applied qualified immunity to a defendant in *Colvin*. *See Colvin*, 852 F. Supp2d at 868 (the court found a defendant corrections officer was entitled to qualified immunity where he followed the regulation and had no reason to believe that complying with the regulation would be in contravention of the prisoner's constitutional rights). Here, however, defendants do not address the issue of qualified immunity in any meaningful fashion. While they raised the defense of qualified immunity, *see* Defendants' Brief at pp. 16-18, defendants concluded that qualified immunity was *not* implicated :

> In this case, Defendants Gargus and Bradford maintain that Womble's Complaint allegations do not withstand dismissal. Because the evidence on this record does not support that Womble suffered a deprivation of a constitutional right, "there is no claim under § 1983, and Defendants have no need for a qualified immunity defense." *Ahlers v. Schebil*, 188 F.2d 365, 374 (6th Cir. 1999); *see also Kain v. Nesbitt*, 156 F.3d 669, 672 (6th Cir. 1998) ("If an officer committed no wrong, then qualified immunity is not implicated.").

Defendants' Brief at p. 18.

Under these circumstances, defendants' motion for summary judgment should be denied without prejudice and they should be allowed to re-file their motion within 28 days to address

plaintiff's claims in light of this Court's ruling in *Colvin* that the MDOC's zero tolerance policy with respect to religious diets violated both the First Amendment and RLUIPA.[2]

### IV.     Recommendation

For the reasons set forth above, I respectfully recommend that defendants' motion for summary judgment (docket no. 17) be **DENIED** without prejudice, and that defendants re-file their motion, if at all, consistent with this Report and Recommendation within 28 days.

Dated:  August 21, 2013 /s/ Hugh W. Brenneman, Jr.
HUGH W. BRENNEMAN, JR.
United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

---

[2] The court considered directing the parties to submit supplemental briefs to address the issues raised in *Colvin*.  However, the court declined because:  (1) defendants' motion for summary judgment is based upon the premise that Policy Directive 05.03.150 ¶ VV is constitutional and does not violate RLUIPA; and, (2) plaintiff has filed a response, a declaration and an untimely brief, none of which address the issues raised in *Colvin*.