UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

OLEN D. WOMBLE, III,

          Plaintiff,

v.

MARY BERGHUIS, *et al.*,

          Defendants.

_____/

Case No. 1:12-cv-814

Hon. Robert J. Jonker

**REPORT AND RECOMMENDATION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983

and the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-1(a).

This matter is now before the court on defendant Darrin Gargus and Derek Bradford's second

motion for summary judgment (docket no. 44).

**I.      Background**

Plaintiff, a prisoner incarcerated in the Michigan Department of Corrections

(MDOC), has alleged that Corrections Officer (CO) Gargus lied in order to deprive plaintiff of his

right to eat a vegan diet, in violation of the First Amendment and RLUIPA.  Specifically, plaintiff

claims that CO Gargus "lied in the memo that he wrote in support of the NOI [Notice of Intent] by

stating that he directly observed plaintiff eating eggs" and "that Gargus later admitted to [d]efendant

Bradford that he did not see plaintiff eating any eggs."  Compl. at ¶ 27.  Plaintiff then draws the

conclusion that Gargus' "sole purpose" for writing a memo in support of the NOI was to show that

plaintiff had violated his religious tenets.

> Gargus, thus, violated plaintiff['s] First Amendment right to equal protection [sic],
> under the U.S. Constitution. He, also, violated plaintiff['s] rights under the RLUIPA.

Consequently, he has caused plaintiff severe hardship, pain, suffering and emotional distress.

*Id.*

Plaintiff also claims that ARUS Bradford violated his rights under the First Amendment, the Due Process Clause, the Equal Protection Clause and RLUIPA by finding plaintiff guilty of eating food that violated a tenet of his designated religion and terminating his vegan diet, by refusing to provide a copy of the NOI arising from Gargus' memorandum and supporting memorandum, and by violating MDOC policy. Plaintiff's claim against ARUS Bradford relates to procedure by which Bradford conducted the hearing. *Id.* at ¶ 30. Specifically, plaintiff complains that Bradford failed to provide him with a copy of the NOI or Gargus' memo attached to the NOI before the hearing. *Id.*

Bradford, thus, deprived plaintiff of his Fourteenth Amendment due process right to equal protection, since every other similarly situated prisoner would have been found not guilty of the charged violation based on the MDOC's "preponderance of evidence" standard. Moreover, Bradford deprived plaintiff of his First Amendment right to freely practice his religion, since his decision to find plaintiff guilty of the alleged violation is based on the equal protection violation.

And finally, Defendant Bradford's decision to go an[d] ask his supervisor -- i.e. Defendant Southerby -- what to do, in light of Gargus' lie, violated plaintiff's Fourteenth Amendment right to equal protection, because every other similarly situated prisoner's findings are based solely on the information contained in the record, per MDOC policy; and because this violation led to the guilty finding and, ultimately, his removal from the religious diet line, Bradford's actions violated plaintiff's First Amendment right to freely practice his religion.

In addition to violating plaintiff's First and Fourteenth Amendment rights, under the U.S. Constitution, Bradford's actions deprived him of his rights under RLUIPA. All of the violations caused him pain, hardships, emotional distress, and suffering.

*Id.* (Emphasis in original.) [1]

Plaintiff seeks $100,000.00 in compensatory damages and $100,000.00 in punitive damages against each defendant. *Id.* at ¶¶ 37 and 38. In addition, he asks for injunctive relief "ordering all defendants named herein to cease making false and/or baseless allegations against prisoners on the religious diet line, then upholding said allegations at subsequent hearings and appeals". *Id.* at ¶ 36.[2]

## II. Defendants' second motion for summary judgment

### A. Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by":

---

[1] The Court addressed plaintiff's allegations in detail an earlier Report and Recommendation (docket no. 35).

[2] Defendants' first motion for summary judgment was denied without prejudice. In reviewing that motion, the undersigned noted in a Report and Recommendation (R&R): that plaintiff's claim arose from the "zero tolerance policy" for violating a prisoner's religious diet under MDOC Policy Directive 05.130.150 ¶ VV (effective Sept. 20, 2007); that this policy was found to be unconstitutional in *Colvin v. Caruso*, 852 F. Supp.2d 862 (W.D. Mich. 2012); and that neither party addressed this development in the case law. R&R (docket no. 35). In adopting the undersigned's recommendations, the District Judge noted that the R&R proposed " to deny the existing defense motion for summary judgment on a without prejudice basis, and to give the defense the opportunity to brief the issues in light of the currently applicable law." Order (docket no. 43). In their present motion for summary judgment, defendants do not address *Colvin*. For his part, plaintiff does not find the holding in *Colvin* applicable to this action, "My claim has nothing to do with whether or not the MDOC's 'zero tolerance' policy is unconstitutional. My claim is that the defendants did not follow MDOC's policy/regulation in its overall efforts to have my religious diet approval rescinded." Plaintiff's Response (docket no. 48). Accordingly, the undersigned will not address the constitutionality of the punishment arising from the "zero tolerance policy" but limit this report to the alleged misconduct of ARUS Bradford and CO Gargus with respect to the issuance of the NOI and the procedures used during the hearing.

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in deciding a motion for summary judgment:

The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

### B.    Plaintiff's objection

Plaintiff objects to the second motion for summary judgment as untimely. *See* Plaintiff's Response at p. 2 (docket no. 48). Plaintiff's contention is without merit. On September 23, 2013, the district court entered an order approving the report and recommendation which gave defendants permission to re-file their motion within 28 days. *See* Order (docket no. 43). Defendants timely filed their motion on October 21, 2013.

### C.    ARUS Bradford

Plaintiff alleged that ARUS Bradford violated his rights by refusing to provide him with a copy of the NOI and CO Gargus' Memo.  The NOI was prepared by L. Daniels at the food service and was based upon the Gargus memo.  The NOI stated that the nature of the hearing was "[t]o remove prisoner Wombley [sic] from the Strict Vegetarian Diet."  NOI.  The reason for the hearing was given as follows:

> Attached is a memo from C/O Gargus stating he observed prisoner Wombley [sic] eating eggs.  According to the "Strict Vegetarian Diet" that he has been approved for, to adhere to his religious tennants [sic], he is in violation of the guide lines set forth in PD 03.05.150 Religious Beliefs and Practices.  As he is not [sic] eat or be in possession of items containing animal or animal by-products.

*Id.*

In CO Gargus' July 20, 2010 memo attached to the NOI, Gargus stated:

> I directly observed prisoner Wombley [sic] 228066 eating eggs.  Eggs were served on the lunch line.  Wombley [sic] is a strict vegetarian and not allowed to eat animal products.

Gargus Memo (docket no. 45-3 at p. 8).

In his affidavit, ARUS Bradford stated that he had "no recollection of Womble making such a request, nor is it the responsibility as the hearing officer to provide additional copies." Derek Bradford Aff. at ¶ 14 (docket no. 45-3).  In support of their motion, defendants submitted the affidavit CO Stellino, who stated that he reviewed the NOI with plaintiff and that a copy of the Gargus memo was attached to the NOI.  Michael Stellino Aff. at ¶¶ 3 and 7 (docket no. 45-4).  While CO Stellino had no specific recollection of plaintiff, *id.* at ¶ 4,  he discussed the specific prcatice he uses when reviewing NOIs with prisoners:

> 5.        . . .  Upon reading all applicable information to an inmate, I allow the inmate to read and review the material in my presence.  At this time, the inmate is given the

opportunity to either agree with the disposition and waive the hearing or request a hearing.

6.    Regardless of how the inmate chooses to proceed, the prisoner is asked to then sign and date the form.  After signing the form, the inmate is then provided with a copy of the materials.

*Id.* at ¶¶ 5-6.

Notably, plaintiff's signature appears on the NOI where he "checked" the box which states:

I request a hearing.  I have received a copy of this report.  My signature does not necessarily mean that I agree with the report.

NOI (docket no. 45-4 at pp. 5-6; Stellino Aff. at ¶ 8.

In his response to the earlier motion for summary judgment, plaintiff stated that while he signed the report acknowledging receipt of the NOI, he did not receive it at that time.  Womble Decl. at pp. 3-4 (docket no. 23).[3]  Rather, CO Stellino "walked off with it" and told him "that defendant Bradford would give them to me."  *Id.*  Plaintiff correctly points out that the NOI form is configured in such a manner that a prisoner cannot request a hearing without agreeing that he received a copy of the NOI.  *Id.* at p. 4.  Plaintiff also stated that ARUS Bradford adjourned the hearing twice to check with his supervisor, ADW Southerby, because "he wasn't going to dismiss the NOI without first checking with his supervisor, ADW Southerby."  *Id.* at ¶ 5. k.

It is undisputed that plaintiff signed the form acknowledging receipt of the NOI. While plaintiff claims that ARUS Bradford refused to give him a copy of the NOI, there is no record that plaintiff advised ARUS Bradford that he did not have a copy of the NOI or that he requested

_____

[3] The Court notes that plaintiff adopted declaration with respect to the second motion for summary judgment.  *See* Womble Second Decl. (docket no. 48).

6

a copy at the hearing.  Rather, plaintiff's statement on the Administrative Hearing Report reflects

that he knew the contents of CO Gargus' memo and contested Gargus' credibility :

> Inmate Womble states, "Never at all did Gargus see me eat eggs or did he approach me when there was eggs on my plate.  He claims that I ate eggs in his statement but I know for a fact he told me that he didn't see me eat them.  His statement is unreliable because it keeps changing.

Administrative Hearing Report (August 4, 2010) (docket no. 45-3 at p. 6).

> ARUS Bradford found that while there was no direct evidence of plaintiff eating the

eggs, plaintiff possessed them on his plate contrary to his religious diet:

> PD 05.03.150, Paragraph VV, A prisoner approved to eat from a religious menu shall have that approval rescinded if s/he eats, or has in his/her possession, any food item that violates a tenet of his/her designated religion.

> After questioning Officer Gargus he did claim that inmate Womble had eggs on his plate and was mashing them down.  When he made a round he saw only bits and pieces on his plate.  Gargus did admit that he didn't see Womble eat the eggs but that they were present on his plate.

> All the time Womble was already on this special diet and knew the consequences of violating this diet.  Since the eggs where [sic] present and in his possession at the time, Officer Gargus doesn't necessarily have to witness him eat the eggs as long as it [sic] in his possession at the time.

> This hearing may be appealed through the grievance process.

*Id.*

> The record reflects that ARUS Bradford disposed of the matter stating, "It is my

recommendation after speaking with Prisoner Womble that he did intent to violate his special diet

and shall be removed from his Strict Vegetarian Diet."  Administrative Hearing Report.  In his

complaint, plaintiff stated that he utilized the grievance system to appeal ARUS Bradford's decision, but the grievance was denied at all levels.  *See* Compl. at ¶ 24.[4]

Viewing the record in the light most favorable to the non-moving party (plaintiff), the Court concludes that ARUS Bradford is entitled to summary judgment.  In making this determination, the Court is not bound to blindly adopt a non-moving party's version of the facts. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Scott v. Harris*, 550 U.S. 372, 380 (2007).  Here, no reasonable jury could believe that plaintiff's claim that did not receive a copy of the NOI before the hearing based on the following uncontroverted evidence: first, plaintiff acknowledged receipt of the documents; second, ARUS Bradford was not responsible for providing plaintiff with a copy of the NOI at the hearing; third, plaintiff knew the contents of CO Gargus' statement set forth in his memo and denied the accuracy of those statements at the hearing; and fourth, while plaintiff contested the accuracy of CO Gargus' testimony, he did not raise any type of constitutional or procedural claim due to his lack of the NOI.  Finally, while plaintiff contends that ARUS Bradford adjourned the hearing twice to check with his supervisor, plaintiff does not state how this adjournment violated any MDOC policy or constitutional right.  Accordingly, ARUS Bradford should be granted summary judgment on plaintiff's claims.

---

[4] While plaintiff stated that he attached copies of the grievances to his complaint, no such attachments were filed.  *See* Clerk's Notation (docket no. 1).

### C.     CO Gargus

CO Gargus set forth the following facts in his affidavit.   Gargus knew plaintiff and was aware that plaintiff had been approved to eat from the strict vegetarian diet.  *See* Darrin Gargus Aff. at ¶ 4 (docket no. 45-5).   Several weeks prior to the July 20, 2010 incident referred to in his complaint, Gargus had observed plaintiff eating chicken which was being served on the regular food line.   Gargus explained to plaintiff at that time, that if he ever observed him violating the strict vegetarian diet again, there would be nothing to discuss and Gargus would report the violation to the food service supervisor.  *Id.* at ¶ 5.  Plaintiff thanked Gargus for the warning and assured him that it would not happen again.  *Id.* at ¶ 6.

On July 20, 2010, while making rounds in Food Service during lunch, CO Gargus directly observed plaintiff seated at a table, chewing something in his mouth.  *Id.* at ¶ 7.  In light of plaintiff's previous violation, Gargus looked down at his Styrofoam tray and saw approximately 4 to 5 ounces of scrambled eggs.   There was also a chunk of egg on the plastic fork plaintiff was using to eat.  *Id.* at ¶ 8.  Scrambled eggs were one of the regular food line items listed on the menu for lunch on July 20, 2010.  *Id.* at ¶ 9.  Gargus then looked at plaintiff and stated "So much for the warning, huh?"  *Id.* at ¶ 10.   After completing his rounds, Gargus wrote a memo as to his observations and the memo was forwarded to the Food Service Supervisor.  *Id.* at ¶ 11.  During the administrative hearing process, ARUS Bradford asked Gargus to clarify whether he actually saw plaintiff place a fork full of eggs in his mouth.  As Gargus explained to ARUS Bradford, while he did not see plaintiff put eggs in his mouth, he did observe plaintiff chewing; noticed a portion of eggs on his plate; and a chunk of egg on the fork he was using.  *Id.* at ¶ 12.  Based upon his observations, it was and still is Gargus' belief that plaintiff had eggs on his plate and fork, and was

eating scrambled eggs at the time.  *Id.* at ¶ 13.  Gargus further asserts that his July 20, 2010 memo is accurate and based on his personal observations.  *Id.* at ¶ 14.

In his previous declaration, plaintiff denies that CO Gargus "saw me eating chicken and confronted me about it."  Womble Decl. at ¶ 8 (docket no. 23).  Plaintiff also states that contrary to Gargus' affidavit, "I did not have any eggs on my plate/tray or fork, while chewing" and that Gargus "never confronted me about such a thing."  *Id.*

Plaintiff claims that CO Gargus violated his rights under the First Amendment and the Equal Protection Clause by filing a false memo in support of the NOI.   Plaintiff's claims fail because "a prisoner has no constitutional right to be free from false accusations of misconduct." *Jackson v. Hamlin*, 61 Fed.Appx. 131, 132 (6th Cir. 2003).  *See Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir.1986) ("[t]he prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest").  "False accusations of misconduct filed against an inmate do not constitute a deprivation of constitutional rights where the charges are adjudicated in a fair hearing." *Jackson v. Madery*, 158 Fed.Appx. 656, 662 (6th Cir. 2005).

Plaintiff's RLUIPA claim against CO Gargus also fails.   RLUIPA provides in pertinent part that:

> (a) No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person--
>
> > (1) is in furtherance of a compelling governmental interest; and
> >
> > (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1.

Here, plaintiff claims that CO Gargus' memo in support of the false misconduct violated his right under RLUIPA because it resulted in the loss of his vegan diet. The Court disagrees. Plaintiff did not lose his vegan diet simply because Gargus wrote the memo; plaintiff lost his vegan diet due to ARUS Bradford's determination that the plaintiff possessed food that violated his religious diet, a determination which was upheld on appeal. In reaching this determination, ARUS Bradford acknowledged Gargus' admission that he did not actually see plaintiff eat the eggs as stated in the memo. The Court finds the present case analogous to a situation in which a prisoner is found guilty of a misconduct charge, and later claims that the misconduct was false and brought against him in retaliation for filing grievances against the officer. In such instances, "[a] finding of guilt based upon some evidence of a violation of prison rules 'essentially checkmates [a] retaliation claim.'" *Patterson v. Godward,* 505 Fed.Appx. 424, 425 (6th Cir. 2012). Similarly, the finding that plaintiff was guilty of the misconduct charge in this case, which was based upon some evidence of a violation of prison rules regarding religious diets, "essentially checkmates" plaintiff's claim that Gargus wrote the supporting memo solely to remove plaintiff from a religious diet in violation of RLUIPA. Accordingly, CO Gargus should be granted summary judgment on plaintiff's claims.

## IV.    Recommendation

For the reasons set forth above, I respectfully recommend that defendants' motion for summary judgment (docket no. 44) be **GRANTED** and that this case be **TERMINATED**.


Dated:  September 24, 2014                    /s/ Hugh W. Brenneman, Jr.
                                              HUGH W. BRENNEMAN, JR.
                                              United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).